IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 20-256-2 |
| | : | |
| XAVIER NOLLEY-HALL | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Xavier Nolley-Hall is still six months from his twentieth birthday and already his ledger of obstacles and negative events has grown too long.  It starts with a father who had bipolar disorder and had been chronically imprisoned.  It includes Xavier's own diagnoses of attention deficit hyperactivity disorder, oppositional defiance disorder, and bipolar disorder – all by the age of 11.  The diagnoses led to treatment with psychotropic medication at a very young age.  There have been suicide attempts.  He has been bullied.  He has had to fight often and has suffered broken ribs.  He has been shot.  The violence among young men in his neighborhood caused him to stop going to school prior to graduation.  It cause him to stop going to work in the suburbs, because he perceived the danger in leaving his home to be too great.  The one positive male role model in his life died of a heart attack, when Xavier was eight years old.  He watched his aunt die suddenly, before he was even in school.  His family's house burned down , when he was a child, and led to a year of homelessness.  Now he has spent seven months in a federal detention center.

Remarkably, given this litany of adverse childhood events, Xavier's arrest in this matter is his first on record.[1] He actually self-surrendered, when he was notified that federal charges had been filed against him. He freely admitted his participation in the spree of looting and vandalism that along with peaceful protests occurred nationwide in the wake of the killing of George Floyd in April of last year. He related to the agents that he had stolen diapers for his sister's child and had entered the bank through a broken window with a crowd of other people. He did not take anything out of the bank. Xavier compounded his criminal liability, however, by denying that he knew one of the other people who had entered the bank. The federal agents had specific information that established that Xavier did know Raphael Shaw, his co-defendant in this Indictment. Mr. Shaw has admitted that he participated in removing a large safe from the bank. Xavier denied his familiarity with Mr. Shaw out of fear of retaliation. Indeed, subsequent to Xavier's initial self-surrender and release several people in the community espoused the belief that Xavier had "snitched" on Shaw. Xavier was reasonably worried about his safety.

The presentence investigator from the United States Probation Office has determined that the total offense level for the conduct in this case is 12.[2] Because he has no criminal history points, the applicable sentencing guideline range is 10 – 14 months. The applicable range lies within Zone C of the Sentencing Table in the United States Sentencing Commission Guideline Manual. U.S.S.G. § 5C1.1(d)(2) provides that, when the sentencing range is in Zone C, "the

---

[1] Xavier disclosed to the presentence investigator that he had a juvenile arrest for disorderly conduct. The charges were reportedly dismissed. There appears to be no record of any charge.

He was arrested a second time shortly after he was released in this matter. The charges following this second arrest are pending. Xavier has not made an initial appearance in that matter. He contests the allegations that have been made.

[2] But for his denial to the agents that he knew Raphael Shaw, Xavier's total offense level would have bee

minimum term may be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes . . . home detention" for imprisonment, as long as at least one-half of the minimum term is satisfied by imprisonment. In this case one day of home detention would substitute for one day of imprisonment. U.S.S.G. § 5C1.1(e)(3). Xavier has been in detention for seven months – more than half of the minimum term of imprisonment in the applicable sentencing guideline range. Therefore a sentence of time-served with supervised release conditioned upon the first three months being served in home detention would satisfy the minimum term of the guideline range.

There are ample reasons to justify a sentence of time-served with a release condition of home detention as sufficient, but not greater than necessary, to satisfy the statutory purposes of sentencing. 18 U.S.C. § 3553(a). The circumstances of Mr. Nolley-Hall's criminal conduct were unique. His behavior could be considered to be aberrant, although it was consistent with that of perhaps hundreds of thousands of others in a period of national upheaval catalyzed by the circumstances of George Floyd's untimely death. It is extremely unlikely that Xavier would ever repeat such conduct. The rashness and impulsiveness of his behavior on that night, while not justified, must be considered in conjunction with his psychological condition and his youthful age. It should be noted that at that particular time, he was not taking any prescribed medication and in part due to the pandemic he had not recently been involved in any therapy. His seven months of detention has been particularly difficult for him. His depression has been exacerbated by his detention to the point of a suicide attempt and persistent suicidal ideation, alleviated somewhat only by medication. He has already been appropriately punished. Now the principal concern in sentencing Mr. Nolley-Hall has to be the treatment of his mental health issues, his abuse of marijuana, and his further education. The psychological evaluation produced at the

Court's request outlines all of the reasons that Xavier needs a dual diagnosis program that includes psychotherapy. This can be achieved through conditions of supervised release by which Xavier's participation and progress in therapy and medical treatment can be monitored and adjusted, if necessary. The stress of incarceration clearly has not assisted Xavier in any way in overcoming his mental health issues. At best the issues have simply been managed. Xavier displays an unusual amount of insight into his issues. There also seems to be a glimmer of untapped intelligence in his self-reporting to Dr. Summerton. It is respectfully suggested that Mr. Nolley-Hall most needs therapy and guidance to overcome his issues. Further incarceration for his impulsive conduct is not needed to provide such therapy and guidance. Perhaps he would be an appropriate candidate for the intensive supervision of the reentry program.

                Respectfully submitted,

                /s/ *Mark Wilson*
                Mark Wilson
                Assistant Federal Defender